## SOPHIA P. GRAHAM, Respondent, *v.* THOMAS H. LUD-DINGTON, Appellant.

*Tenancy by the curtesy — seizin in fact in the wife necessary thereto — right of wife to sue alone — dowress must keep down quit-rents on the land — statute of limitations does not run against remainder-man until the death of the tenant for life.*

September 6, 1842, Henry Luddington died intestate, leaving him surviving a widow and ten children, among whom were the defendant and the plaintiff, of whom the latter was then married and had children living. Subsequently a partition was had, and certain land formerly owned by the intestate was set aside to the plaintiff's mother for her dower, such premises being held under a perpetual lease, subject to the payment of rent. In 1856, the widow and the defendant, of whom the latter then occupied the said land, permitted the rent to remain in arrear, and allowed the lessor to recover a judgment for the possession of the said land, in pursuance of an agreement by which it was provided that the land should be subsequently conveyed to the defend-ant, which was done; the agreement being made with intent to deprive the plaintiff and the other heirs of Henry Luddington of their interest in the land. In 1873 the widow died. In 1875 this action was brought by the plaintiff to recover her interest in the land and to have the said judgment and deed set aside so far as it might be necessary to do so to attain that result.

*Held,* that the plaintiff, prior to the death of her mother, never had such a seizin, in fact, of the land as to constitute her husband a tenant by the curtesy, or to give him any estate therein.

That upon the death of her mother in 1873, she acquired an absolute right of property therein the same as a *feme sole,* and that it was not necessary that her husband should join with her in an action to recover her share therein.

That it was the duty of the dowress to keep down the rents accruing under the lease, and that the judgment and deed, which were procured by the defend-ant, were void as against his co-tenant.

That the plaintiff's right of action did not accrue until her mother's death, and was not barred by the statute of limitations.

Appeal from a judgment in favor of the plaintiff, entered upon the trial of this action, by the court, without a jury.

Henry Luddington died September 6, 1842, intestate, leaving, surviving him, his widow, Jane Luddington, and ten children, among whom were the plaintiff and defendant, of whom the latter was married and had children then living. Henry Luddington was, at the time of his death, the owner of about 263 acres of land in the town of Bovina, Delaware county ; 215 acres of which he held under a lease in fee from Edward P. Livingston, which reserved, among other things, an annual rent charge of thirty-eight

bushels and forty-five pounds of merchantable winter wheat, to be delivered to the lessor on the first day of May in each year.

In August, 1843, Jane Luddington, the widow, having become the owner, by purchase, of the share of Joseph N. Luddington, one of the children, in the real estate of Henry Luddington, filed a bill in chancery for a partition in the said real estate between herself and the nine other children as tenants in common thereof, and for the admeasurement of her dower therein.

Commissioners were appointed to make partition, by whom actual partition was made, in which they set apart to Jane Luddington, for her right of dower, the premises described in the complaint in this action.

The portion set off to the widow, and to each of the children, was made subject to such rents as the intestate, Henry Luddington, was bound to pay to the holder of the soil.

In 1856, the rent upon the said premises being in arrear, the lessor commenced an action of ejectment against Jane Luddington and Thomas H. Luddington, the defendant in this action, to recover the possession thereof. No defence was put in, and upon the written admission of the defendants in that action of the truth of the complaint, judgment was entered in Delaware county clerk's office, September 2, 1856, in favor of Clermont Livingston for the recovery of the possession of the premises and $16.37 costs.

September 8, 1856, an execution or writ of possession was issued upon the judgment, and Jane Luddington and this defendant were dispossessed.

November 10, 1856, the defendant purchased the land in question and other land of Clermont Livingston, paying him $2,500, taking a full covenant warranty deed, in which Livingston covenanted that he was " seized of a good and indefeasible estate of inheritance therein, clear of all incumbrances, subject, however, to any lease or leases made by the late Robert R. Livingston, or any person or persons claimind under or from him, and subject also to any incumbrances of whatever name or nature made or created by the lessee or lessees of said premises or any part or parts thereof."

The rent had been permitted to remain in arrear under an agreement with the lessor's attorney that the land should be reconveyed to Thomas Luddington ; he intending to deprive the plaintiff and

the other heirs-at-law of Henry Luddington, of their interest in the land.

The plaintiff knew of the re-entry, the recovery of the judgment, and dispossession, and execution of the deed, prior to January 1, 1858.

The defendant was in possession of fifty-one acres of said land, claiming to own it, from November, 1856, down to the death of his mother, Jane Luddington, which occurred December 12, 1873, and has been in possession of them since that time.

In June, 1875, the plaintiff demanded possession of the defendant of the undivided tenth part of the said fifty-one acres, and he refused to give her possession, claiming that he owned it under his deed from Livingston.

The plaintiff then commenced this action in equity to obtain a decree declaring the judgment of re-entry recovered by Livingston and the proceedings thereunder and the deed from Livingston to the defendant fraudulent and void, as to her, so far as they divested or purported to divest her of her title to the said fifty-one acres, and that she be adjudged the owner of the undivided one-tenth part thereof and recover possession of the same.

*I. H. Maynard*, for the appellant.

*Wm. Gleason*, for the respondent.

BOCKES, J.

The learned judge, who decided this case at Special Term, shows very clearly in his opinion, written on that occasion, that the action was well brought by the plaintiff.* Her husband never

---

* The following opinion was written at Special Term :

FOLLETT, J. :

Two legal objections are raised by the defendant to defeat a recovery in this action.

1st. That if a right of recovery exists, the husband of the plaintiff is entitled to the possession of the lands, and he alone can maintain an action for their recovery.

2d. That an action for the recovery of the land is barred by the statute of limitations.

Before the married woman's act (chap. 200, Laws 1848), if a wife had title to land, and was entitled to its possession, her husband was entitled to a life estate therein during his own or the life of his wife, and to the rents and profits there-

had possession of the premises in right of his wife, nor did he evre acquire the right of possession as tenant by the curtesy, for the reason that his wife, the plaintiff, had only a seizin in law — never an actual seizen — such a seizin, in fact and in deed, as was necessary to constitute her husband a tenant by the curtesy. The plaintiff's right of possession accrued on the death of her mother in 1873. This was long after the passage of the act known as the married woman's act, by force of which she took an absolute right of property in herself as a *feme sole*. This, I think, is plainly shown in the opinion of Judge FOLLETT. There is one suggestion now made by the appellant's counsel, which, perhaps, requires further comment. It is urged that there was a

---

from. If a child was not born alive, the wife's estate upon her death, descended to her heirs free from her husband's estate. If a child was born alive, her estate descended to her heirs, subject to the continuance of the husband's estate during his life, which was called thereafter a tenancy by the curtesy. (Williams on Real Prop. [12th ed.], 223 ; 1 Wash. on Real Prop., chap. 9, § 1, paragraph 2, page 276 ; 2 Kent's Com., 130.)

During coverture, a husband might recover by action, possession of the wife's land, though a child had not been born, his right not being dependent upon a tenancy by the curtesy having become initiate.

A tenancy by curtesy is not initiated until the wife becomes entitled to the possession of the lands in which she has an estate. (4 Kent's Com., 29 ; Williams on Real Prop. [12th ed.], 228 ; 1 Washburn on Real Prop., chap. 6, paragraph 24, page 135 ; *Ferguson* v. *Tweedy*, 43 N. Y., 543.)

After assignment of dower the seizen of the heir is defeated *ab initio*, and the dowress is in of the seizen of her husband as of the time when that seizen was first acquired. (*Lawrence* v. *Miller*, 2 N. Y., 245.)

It is very clear that a husband could not acquire, through his wife and the marital relation, a right which the wife, had she remained single, was not entitled to assert. In this case the plaintiff did not become entitled to the possession of the lands in suit until 1873, when, by force of the married woman's act, they were freed from the husband's life estate during the life of the wife.

It has been repeatedly held that the married woman's act is constitutional, except when it affects vested rights, and that it excludes the husband from all rights in his wife's estate, except such as were vested at the date of its passage, though marriage was contracted before the act.

Previous to the death of Jane Luddington the husband of the plaintiff clearly had not a vested right in possession in this land, because his wife had none, neither had he a right vested in interest, because it was uncertain whether he would ever become entitled to the right to possess this land. His rights depended upon his surviving the dowress and upon his wife surviving her. (*Cregier's Case*, 1 Barb. Ch., 598 ; *Ferguson* v. *Tweedy*, 43 N. Y., 543.) It was not vested, but contingent, depending upon two contigencies.

seizin in the plaintiff, following her father's decease and before dower was assigned to her mother, sufficient to sustain an estate in the husband as tenant by the curtesy. But, as was decided in *Lawrence* v. *Miller* (2 N. Y., 245), cited by Judge FOLLETT, after assignment, the seizin of the heir (here the plaintiff) was defeated *ab initio*, and the dowress was in of the seizin of her husband, as of the time when that seizin was first acquired. Again, as above suggested, a seizin to uphold the husband's curtesy must be an actual seizin in the wife, with few exceptions, not necessary here to be noted. (*Ferguson* v. *Tweedy*, 43 N. Y., 543.) This the plaintiff did not have. It is found that her mother was in actual possession from the death of her father until dower was

---

"An estate is vested in possession when there exists a right of present enjoyment.

"An estate is vested in interest when there is a present fixed right of future enjoyment.

"An estate is contingent, when a right of enjoyment is to accrue on an event which is dubious and uncertain." (1 Fearne on Remainders, 2; 1 Preston on Estates, 62, 64; 4 Kent's Com., 202.) Under the married woman's act the husband of the plaintiff has no present estate in the lands in suit, and is not a necessary party for their recovery.

Is the action barred by the statute of limitations? The judgment was recovered, and the deed executed in 1856. Their existence was known to the plaintiff before 1858. The dowress died December 12, 1873. This action was commenced July 31, 1875. The defendant insists that it is barred by the limitations prescribed by subdivision 6 of section 91 or section 97 of the Code.

By this action the plaintiff seeks to recover, as one of the heirs of her father, the possession of her share of the lands assigned to her mother for dower.

From the defendant's wrong two separate legal injuries resulted to the plaintiff; one immediately to her reversion, by clouding her title thereto; another, to her right of possession, which did not ripen into a cause of action until she became entitled to possession at the death of the dowress. When a right of recovery exists upon two separate grounds, the loss of one by lapse of time, does not impair the other. (Angel on Limitations, 375; Tyler on Ejectment, 117.)

Adverse holding as against a reversioner does not begin to run until his right to possession accrues, and all persons previously holding, are presumed to have held under the particular estate. (*Chadwick* v. *Broadwood*, 3 Beav., 308: *Tyler* v. *Watkins*, 4 B. Mon., 561; Angel on Limitations, §§ 384, 385.) If the lapse of time has not barred a plaintiff's right to recover land, the right to undo the wrongful acts of the defendant under which he claims to hold, is not barred. It is, unnecessary to inquire whether when actions had names, this would have been called an equitable action or an action of ejectment. The distinction between legal and equitable remedies has been abolished, and rights which before the Code could only be recovered by resorting to two tribunals may now be recovered in an action.

assigned. Now, it was not enough that the plaintiff had a vested right in the premises as heir. A person, who claims as heir or devisee, has only a seizin in law before entry; and if before entry a stranger enters, it is an abatement, not a disseisin. (3 Bl. Com., 167.) "In descents of land, which are cast upon the heirs by the act of the law itself, the heir has not *plenum dominium*, or full and complete ownership, till he has made an actual corporal entry into the land." (2 Bl. Com., 312.) So SUTHERLAND, J., says in *Jackson* v. *Johnson* (5 Cow., 74, p. 98), "A person claiming by descent or devise has only a seizin in law before entry;" and further, that "upon such a seizin of the wife there could be no estate by the curtesy." It is unnecessary to inquire whether the case would have been the same had the plaintiff acquired her right and title by purchase under a deed. If, then, the husband could have no estate by the curtesy until actual seizin by the wife, the

In determining which period of limitation applies, the subject matter of the action is made the test by the Code. The subject matter of this action is not the judgment nor the deed, but the land. The cause of the action is the wrongful withholding.

Being for the recovery of real property it falls as to limitation of time in which it must be brought, within chap. 2, title 2, part 2 of the Code, which is entitled "actions for the recovery of real property," by which the limitation is fixed at twenty years. Sections 91 and 97 are embraced within chap. 3 of the same title and part which relates to and is entitled "The time of commencing actions other than for the recovery of real property," and are not applicable to this action.

It was the duty of the dowress to keep down the rent and all charges, and save the heirs from a forfeiture. (2 Scribner on Dower, chap. 30, pp. 23–31, pp. 730–734.)

A tenant in common, buying in an outstanding title, is deemed in law to have done so for the benefit of his co-tenants, and he will not be permitted to use a purchased title to exclude his co-tenants from their interest in the estate. (*Weaver* v. *Wible*, 25 Penn. St., 270; *Lloyd* v. *Lynch*, 28 id., 419.) Community of interest produces a community of duty, and there is no real difference on the ground of policy and justice, whether one co-tenant buys up an outstanding incumbrance or an adverse title to disseize and expel his co-tenant. It cannot be tolerated, when applied to a common subject, in which the parties had equal concern, and which created a mutual obligation, to deal candidly and benevolently with each other, and to cause no harm to their joint interest. (*Van Horne* v. *Fonda*, 5 Johns. Ch., 407.) The defendant by his purchase gained no advantage over his co-tenant. Under his deed he stands in the place of the owner of the soil, and as between him and his co-tenant, the leasehold estate was not merged in the fee.

The plaintiff is entitled to recover an undivided tenth part of the land, subject to the payment of a proportionate amount of the rent with mesne profits, to the date of the trial. (*Vandevoort* v. *Gould*, 36 N. Y., 639.)

action was well brought by the latter alone. On the decease of her mother in 1873, the property came to her free from all claim by her husband, and she would hold it and could dispose of it by virtue of the married woman's act, as if she were a *feme sole.*

The remaining question, whether the plaintiff's right of action was barred by the statute of limitations, is more difficult of solution. But after consideration I am inclined to accept the reasoning and conclusions of Judge FOLLETT, in his opinion, as sound in that regard. The question is, when did the plaintiff's right of action *on the facts stated in the complaint and found by the judge,* accrue to her? Her right of action here was her right to have possession of the lands; that right did not accrue to her until her mother's decease, in 1873. To that time she could claim nothing. To that time she was barred of no right by the recovery and deed sought to be set aside, or to be decreed inoperative against her. This precise question did not arise in any of the cases cited by the learned counsel for the defendant. Again, this was not a case where the remedy sought by the action must be administered by a court of equity; for the plaintiff might have brought simple ejectment, and in that suit have assailed the recovery. (*Phillips* v. *Gorham,* 17 N. Y., 270; *Van Deusen* v. *Sweet,* 51 id., 387.) If, then, the plaintiff's right of action on the facts stated in the complaint and found by the judge accrued in 1873, the action was not barred by the statute of limitations.

It can hardly be disputed that it was the duty of the life-tenant, and those claiming under her, to satisfy the accruing rents. (2 Scribner on Dower, chap. 30, pp. 23 to 31; also pp. 730 to 734; also *De Witt* v. *Cooper,* 18 Hun, 72, and cases cited). In conclusion, I am of the opinion that the judgment appealed from should be affirmed.

LEARNED, P. J., and BOARDMAN, J., concurred.

Judgment affirmed, with costs.